First case this afternoon is case number 410-0874 Guttschow v. Town of Normal For the for the appellant John Morrill for Morrell. Hey, if I'm hitting 50% I mean that's not bad for a judge. I'm going to try Miller, Mr. Miller. Exactly, thank you. 75%. Please proceed. I'm going to try and be brief today because I am familiar with the fact that you are familiar with the facts of applicable law. I'm going to start as I may relative to the request to admit facts. Our position on that is the statement in most of these, 1, 2, 3, 4, that Jenna L. Guttschow individually, I'm interjecting the word individually, presently at the time that this was being done lacks the mental capacity to answer the interrogatories. Our position is that, 1, if all of these were admitted, and we believe they are not, they don't accomplish anything insofar as what the plaintiff can prove. Jenna Guttschow as an individual, even if not competent, will be able to, to other witnesses, demonstrate the evidence and the like, present her case. At present, we're barred from doing that. Nobody saw the... Pardon me? Nobody saw her fall, did they? No. What kind of witnesses can you... Well, we have post-witnesses that indicate what she was saying extemporaneously at where she had fallen. We have admissions, or as you were, statements to the physicians in ER as she soon got there on what had happened, what she tripped over, on how she fell. And that goes through each of the physicians that attended her where she made those comments to them on what happened. Were the names of those witnesses and post-event witnesses disclosed? The two ER people are disclosed in what I had presented in support of my response to the motion for the opposition, and in what they call ECRN radio report, it says, tripped on fence post. And that's at C322. Then following that, on the back page of that report, it indicates again, upon arrival, found patient sitting on sidewalk next to construction fence where she fell. In the reason for consultation later at C325, the information taken from her, and I'm assuming it's taken from her, but it doesn't say she said, she tripped over a rod at a construction site, which is where she was found next to it. Then on exhibit three, page six, this is C327, this 43-year-old female who fell today when she got her foot caught in this scaffolding. So we do have those comments in that, and we also have presented in support of our response to the motion for summary judgment, pictures as exhibits to Who took the pictures? The brother. When were they taken? Same day. Did you disclose that? No. I never had the opportunity. Well, in the motion for summary judgment context, don't you have the opportunity to submit affidavits from witnesses to address factual matters, including the authentication of documents and photographs? That wasn't brought up. Any waiver? Is there such a thing as waiver? On a motion for summary judgment and response? Response. If something isn't brought up, isn't it waived? So your position is they forfeited any objections to the lack of foundation in your photographs by not raising it? That's exactly what I'm saying, Judge. Exactly what I'm saying, and what I said previously is this. If you take all of the propositions they said without anything I responded to, they don't accomplish anything. They say that she, Jenna Gutshaw, individually, she herself can't prove anything. That's a she. There are other people that can come forward, some of which I mentioned in my response and what she said contemporaneously with the fall, that can come forward and give before and after testimony. And the individuals that came in the ER had contemporaneous comments with her that she was coming through and fell. The context in which this came up with the trial court is she couldn't present anything. She couldn't testify. She couldn't give what had happened before and after or in. She has multiple sclerosis? Yes. And she's an unsteady walker? Well, that's her contention. How can you establish that she tripped over something as opposed to falling herself? Well, of course, that was the argument of counsel or the defendant. There will be circumstantial evidence, I believe, that will show she hadn't fallen. She called. We will have evidence that she walked four to five miles every day on the same route. Hadn't fallen. She hadn't had situations like this until this fence was put up on the sidewalk and the bases of the fences. And by that, what I presented to you, which was in the back of my motion in response to the summary judgment, exhibits 1, 2, 3, 4, 5, and 6. I'll just show you what I think you've looked at insofar as my response. It shows what was there, present, sticking out onto the walking portion of the sidewalk, well beyond, well onto the walking portion of the sidewalk, which circumstantially certain would raise the question, insofar as this may or may not have caused the fall. We thought, and do believe, we had enough to go forward so that if they had denied the motion for summary judgment or deferred it to a later date to permit us to do more discovery, we could have shown enough, we believe, to have refuted the motion for summary judgment. And that's all we were seeking. It could have been denied. Our response could have been refuted and said you didn't do it, you have nothing here more than you had the last time. But insofar as post-hearing on the motion for summary judgment, counsel has come back with other things that suggest none of this should be before the court. But when we presented and what Judge Steigman asked about was, were these objected to when we filed our response to the motion for summary judgment? And our position is no. And from June to November, these were on file. All of this was on file. There was no motion to strike. I want to put this in context of the trial court. Okay. There's a motion for summary judgment filed by the defense. Yes. In response to the motion, you file this document to which are attached the photographs. Photographs and the medical. Okay. And if I understand correctly, there was no verification of any of this. That's correct. But there was no objection. So the time comes at the hearing on the motion, and I'm the trial court. I have to consider what you presented in the absence of their objection to the hearing on the motion for summary judgment to the same. Other than that, it's good. The court just can't say this isn't good? Or can't think it? Well, let's turn it around, Chuck. How can the court say when this has been sitting there from June to November and there have been no motions, there's nothing to strike, no questions to raise? If they had raised them. Well, I suppose it's a question of procedure. In the absence of a motion to strike, the trial court is required to consider what is arguably otherwise inadequate evidence? Evidence without a foundation. Well, let's back it up. The motion to strike, for instance, instead of a motion for summary judgment. Motion to strike may have been granted with leave, or not, for me to fill that in. I could have come back and then provided verification. The problem there is with good counsel, excellent counsel, against me, he's going to say that these people who are giving you affidavits have never been deposed. We don't believe what they have there are factual. They're opinions. We don't know their standing. Were they there? How soon were they there? How come? Just based upon the photographs for a moment. Just focusing on that. Your position is that it's adequate for the trial court to consider, and should consider and give whatever way the court deems appropriate, unless there is an affirmative motion to strike what you filed in response to their motion for summary judgment? Well, I'm saying procedurally, if that was going to happen, it would have given us in that six-month or seven-month period to come back, I hate to use the word fill it in, but back it up with other information or with these certifications. Why couldn't the position of the defense have been we made our motion for summary judgment? There's their response. Including the fact that your response is inadequate without their having to move the strike. Well, because of the confidence of opposing counsel. Well, forget about that. I mean, I'm a trial judge. I've never seen you before. You know, am I supposed to? I'm the trial judge. I have a motion for summary judgment. I have your response that is inadequate. It's a matter of law. I've got no authentication for these photographs. They're not worth anything. Well. So in the absence of his motion to strike, I have to now give weight to the photographs? How about leave to me to respond to the motion? First of all, there are no motions against. Well, how about I require you to do it right in the first place? That is, it's like saying, well, you threw in a statement from a witness, but there's no affidavit under 191. So I have to say, counsel, there's no affidavit? Well, let me tell you, this highly competent attorney would do this, and I would do it on the other side. Here I come in with these statements, verified or otherwise. The objection I make if I'm on the other side is, wait a minute, wait a minute, isn't timely, isn't timely. Two, there are conclusions in this, not just statements of fact. So I ask of the judge to borrow. He's going to borrow. Then we go on to some of these other things that you're raising that I'm asking to fill in, as it were. Here's where the, well, I did it in the pictures, but here is the path that she was taking. Here's what you saw in her path, which were the things that posed a risk to anyone walking. And here, this person at this end and this end will tell you that's the case, plus where she was found, right next to it. Does that give some inference that at least deny the motion for summary judgment and permit me, if you will, give me 30 days or seven days to come in with those affidavits? But now, as I said earlier, this competent counsel is going to make an objection, either because it's not timely, what I'm doing, or that it is replete with conclusions. So I move off that and I suggest, well, a couple other things I can do. And he's going to say, well, they're not timely either. You missed it here, bud. I say, well, from June or July to here, I guess I have missed it. All I'm asking now is an opportunity to go back and fill this in. Not with testimony by my person, but I don't have to prove it by my person. And that's the response here that I have to did she do this, did she do that, did she do that. It doesn't have to be limited to did she, and that's what all this is on. Did Jenna Gutshaw do this? Does she know this? I'm an author of an opinion not so long ago in summary judgment. We dealt with a situation that one side was responding to a motion for summary judgment and said the problems with the other side's position were that the affidavits they tendered were in violation of the Dead Man's Act. And they just argued that for the first time to hearing the motion for summary judgment, and the trial judge seemed to be buying it. And I thought this was bad form. If you're going to argue on that basis, you should make a motion to strike, but someone would notice, including the court, that there's a problem. The distinction between that case and this is the deficiencies aren't some theory from the other side. The deficiencies are pretty clear regarding the photographs, which I want to limit myself to at the moment, that there's no foundation. There's no foundation ever tendered. Pardon me, Judge. If I had presented X and counsel on the other side says that's not good enough, I would like to think the trial judge would say, how about you, fella? I would say, may I have seven days to respond to this because I can't verify these things. But as I said earlier. Here's my problem, Counsel. I don't understand how you present the court with photographs without a semblance of a foundation. That's pretty basic stuff. And given the fact that we have several cases that are now taking months and months, I'm troubled by the idea that, as the trial judges point out to you, what should be obvious. There's no foundation for any of these photographs. They're insufficient. And then to say, well, you want to have time to correct the deficiency, which was clear from the beginning. Since you're giving great credit to the trial judge, he didn't mention that. He didn't say what I gave wasn't worth a damn. He said, as he did at the end of this, you can have it one of two ways. You didn't get it done in this way, so there you go, you lose. Did you file a motion after that asking to submit additional factual materials? Well, I had some relationship with the presiding judge and knew it would be worthless. You knew it would be worthless, so you didn't do it. Well, you'd have to admit, when you were sitting in the trial bar, pardon me, trial judge, there were some times, if I were in front of you and I know you pretty well, I might think, oh, hell, are you kidding? So that does happen at the trial bar. But you've got to make a record. You keep telling us all this information is there, but you never put it in. And then you never ask for an opportunity to put it in. Wouldn't you say to me, judge, is this all you have, Morell? I suggest, why isn't this verified, Morell? Why isn't this this way, Mr. Morell? Because otherwise I'm not giving it any basis. You would have done that. You would have done that. Or you just said, on the basis of what you've given me and what's before me and has not been verified, blah, blah, blah, blah, I'm going to deny your request to avoid this, and I'm going to go with the motion for summary judgment. Doesn't opposing counsel have to raise what you're raising? Doesn't it? In other words, if I said a cow ran over him and did something, and it didn't, doesn't the other side have to come and show that the cow wasn't there? Answer, no. There are two ways to win a motion for summary judgment. One is the defendant affirmatively proves that it did not happen that way. Two, the defendant shows that there's no evidence. The defendant shows that, and that's the Celotex rule, the defendant shows that the plaintiff has no evidence to prove his case. That's what they did here. Plaintiff, pardon me. Go ahead. Plaintiff herself, she individually, and that's the way it's categorized all through here, she herself couldn't because of her mental state, which, by the way, mental state wouldn't come up until the time of trial. You know that. There's an affidavit from her that she didn't know how it happened, right? Yeah. Why isn't that all that the defendant needs to prove summary judgment? Because that's not the only way it could be opposed. Well, why didn't you come up with something else to oppose it? Well, if I had the opportunity to go back and get certifications and those types of things, if they were raised and said, Morell, you don't have any certifications on this. Do you understand that? Yes. And why didn't you give them? Haste. That's beside the point, Mr. Morell. We're not going to give you anything on haste. The thing is you needed to have verification on all of this. Your lady can't do this. That's right. What if she'd been dead? Now what? What can they put on her? She's dead. The best we could do at that point, if she died as a result of this fall, would be what I'm doing, and that is bringing it up to the point and picking it up right afterwards when she's saying she fell on these things. There are gaps in all kinds of lawsuits. You know that. And this has a gap. But I think we cover the gap by bringing her up to that point, giving a history of her walking five miles every day to and from, not tripping on this, not falling on this, time of day, whatever. I don't know. All I'm saying and all I'm asking, under the circumstances, if the judge had said, I'm going to take this under advice, or if the judge had said, I'm not going to rule today, Merrill, I'm going to give you 30 days. If you've got something, seven days. If you've got something that you think you can address with what you've given me or in supplement, you've got it. And if you can't bring it, you lose. Well, based on what you're talking about, I go back now to these people and say, I need affidavits from them. And now I'm going to take you back to the defense counsel. If I'm over there, if these aren't factual and they can't really tie it to what's going on, then we'll strike it. And you probably do grant it. Those types of things that I would be bringing in, good counsel, excellent counsel that I have against me, would be doing that on the basis of what I've just been saying. I realize, and you have a record, not necessarily the three of you, but a couple of you, have a record, most recently, of doing what you're suggesting you're going to do here. And you don't like cases to go on when they can be closed and ended by a summary judgment. Actually, my record, I think, is the dissent in the Roetzel case. I just went back and reread it, one of my most spirited dissents. But in that case, it seemed like a different situation than yours. It seemed like a case where the question was, why did the overhead door come down and hit the person? There are other cases, though, involving people that have slipped and fallen on sidewalks where the court has said, we can't prove, there's no proof here of why they fell, motion for summary judgment granted. Well, there are many of those, and I've read them. You're right.  I guess what I'm trying to address here is the proclivity of the court on these motions for summary judgment to expect the move-ant who has lost to prove his damn case at the point where it's motion for summary judgment. I don't believe that's our responsibility. I think we do have to come forward and address things and so on and so forth. And, Mr. Morrell, is this the best you have to offer? I said, well, Your Honor, you mentioned here in our discussion and argument that what you've given me isn't verified. And I have seven days. I can give it to you verified, and as I said earlier, this excellent counsel is going to come in and stop us from doing that, saying it's not meritorious, or the affirmations don't meet the questions that he's talking about. You have time, counsel, but you will have rebuttal. I believe that's unfair. Mr. Miller. I'm not going to argue with you whether this came from love or not. David, get out of your way. I don't know. He gave you a lot of compliments during his argument. And Mr. Morrell and I, Jack and I, are contemporaries and have been friends and have shared many cases over the years, which is why this give and take. So why is he so wrong here, then? Okay. And it may pain me to say this, but the chronology of the facts are that in April of 2009, we propounded our interrogatories in which we asked not just for the identity of eyewitnesses, but also for the identity of any persons who were present at the scene immediately before or immediately afterward. And we also requested the identity of any persons who had had conversations with the plaintiffs. None of these people were ever identified. There were no answers to those interrogatories. In December of 2009, we served the request to admit facts to establish that the plaintiff has no memory of what happened and also that the plaintiff is not competent to testify as to those events. The response to that was an objection based upon the, I assume an objection, perhaps not, the response just being that the Dead Man's Act precludes a response. So from that, we had gathered that there weren't any eyewitnesses, there weren't any persons who came to the scene, there weren't any persons who had conversations. Well, just pausing right there, I marvel that we don't see more use of request to admit, and that's to your credit that you use one. How about adding to it request to admit there were no eyewitnesses to this? Wouldn't that have solved the problem that you're now asking us to infer? I'm not saying, and I'm not asking the court to infer, I think it's pretty much an established fact here that there weren't any eyewitnesses. Now, as far as persons who may have come to the scene afterward in the form of ambulance people, in the form of persons that she saw who may have had conversations with her, I guess so, but we get a response that the Dead Man's Act applies, as if that is the justification also for not providing us with the discovery responses. As we point out in our briefs before this court, the rule of law is that discovery responses are to include information which is known to the attorney as well as to the client for obvious reasons. We filed the motion for summary judgment in January of 2010. The response which contained these records and these photographs was made on June 9, 2010. Now, there was a long gap between the filing of the motion and attempting to get a hearing for a number of reasons relating to either the health of counsel or the trial court schedule or the schedules of counsel. But in any event, the motion for summary judgment was on file for over six months before there was any response. We then filed a reply to the response on September 28. And contrary to a counsel's representation, in our reply we pointed out in the instant case no admissions, depositions, counter-affidavits, or sworn materials of any sort have been filed in opposition to the motion. Absent a verified response, the sworn matters in support of a motion for summary judgment must be accepted as true, and we cite Ola versus Christie Clinic Association, which came out of this court, 200 Yelab 3rd, 191. When was the hearing? The hearing was then on October 4. So you filed that response when? He filed the response in June. We filed the reply on September 28. The hearing was on October 4. No request was made for an extension of time or anything else to verify the materials. So if Mr. Morell had told you who took the photos and when they were taken, and if he had told you the names of the medical responders, you'd lose the motion for summary judgment? No. No, what would happen then, he would have to provide the foundation for the photographs, provide the foundation for the records, so that they would be competent for the court to consider in opposition to the motion for summary judgment. That shouldn't have been hard to do, should it? I would think, well, I don't know. The photographs, certainly not. Who the people were in the medical records, that might have taken a little work. Wait a minute, wait a minute. My question to you is, all he had to do was have the brother sign an affidavit saying, I took these photographs on X day, and they'd be admissible, right? Yes. And in that event, you would lose? No, I certainly wouldn't lose, because having the stanchion there doesn't mean that she fell over. This is the same thing that we're talking about. There is nobody that is connecting, and there isn't any evidence that connects this woman. That's my question. Is this a technical objection to the admission of the photos, or are you saying the photos don't show anything? I mean, they don't prove anything. The photos certainly don't prove what he has to prove. There's no inference that could be drawn from the photos? No, no inference can be drawn from the photos. Just to follow up on Justice Cook's question, the brother signed an affidavit, yeah, I took those photographs on such and such a day. You said that still wouldn't be enough. What more, then, would have he had to do, provide the names of witnesses and affidavits from the witnesses as to what they would say if called upon to testify? Tested the condition before and after the fall? No, I think what we've got to have is the affidavits or evidence of some sort, foundation they're competent to be considered on a motion for summary judgment or in opposition to a motion for a summary judgment, which ties the pipe that is shown in the photographs to the fall as the cause of the fall. So we have to go back behind that and locate witnesses. There aren't any that saw it. We have to go back then and say, can they identify witnesses that would have had a conversation with her? Assume that they have the witnesses then identified who are responsible for the histories in the medical records. At that point, we would probably, as you play the chess game of litigation, have asked for the opportunity to depose those witnesses because we don't know where that information came from. And we have to be able to establish that that is competent to resist the motion for summary judgment. So if the game were played out, he would ask for leave then to have provided a verified response. As the court is aware, a 1005C requires a verified response or the motion for summary judgment will be granted forthwith. But assume that he had asked for the time the court had given him at the time he had come in with the identities of witnesses, we would have been given the opportunity then to challenge the competence of the witnesses because they would have to lay the foundation further that these were conversations with her and the setting of the conversations with her. You were furnished medical records, were you not? No. Do you have medical records now? I got what he filed in their response. If the court will recall, we did not get answers to our interrogatories at all. Okay, you have the medical records. We have the portions of the medical records that he provided. Right. And those show names of responders? I don't believe that they do. I would have to go through, which I have not done, to see if the names are there or if the initials are there or if it is simply that. Mr. Morrell said that the medical records show she told the medical responder that she fell over the pipe or whatever. Is that what's in the medical record? The medical records say that she fell over something. He referred to it as scaffolding. It says something. There are other portions of the medical records where she says, as I recall, she doesn't know what she fell over. And there is one portion of the medical records where she says, I think, that she fell over it. Well, I don't know that she says that, but the history is given that she fell over a pipe. We don't know if her brother is there giving the history or whether she is giving the history, which is one of the reasons why you've got to have competent evidence in opposition to a motion for summary judgment because we have potentially some pretty clear hearsay there. Is the medical record admissible? Would it be admissible at a trial? The medical records would be admissible based upon the business record foundation, which was not offered here to support the records. And we point that out in our brief. Any business records, if you're going to use them in favor of or in opposition to a motion for summary judgment, must nonetheless be supported by the business records foundation. So your objection really is a technical objection. He didn't jump through all the hoops he needed to jump through to get this evidence before the court. I don't believe so because in our brief we pointed out both ways. We say that it is unfortunate here that we find ourselves in this procedural setting. We also point out and we set forth the cases under similar facts where summary judgments have been allowed and have been affirmed because of speculation as to what actually caused the fall. And I think, Justice Cook, you pointed out that she is a lady walking with a cane who has multiple sclerosis, who by way of history, if we are going to consider those records, had a history of multiple sclerosis and I think lightheadedness in addition. And that parallels with the cases that say you can't account for a fall simply because in one of the cases the shower stall was slippery, in another case because the handrail on the stairs was deficient. That requires speculation. So substantively we based our motion upon the fact that they cannot prove the causal link between the condition, assuming that the condition that is shown on the photographs is the competent and we still don't have a foundation for that. In making a motion for summary judgment, you can't prevail on the deficiencies of the response. Indeed, there doesn't need to be a response at all. The question is whether or not your motion carries the day, whether you've demonstrated all that needs to be demonstrated and that there's no genuine issue of material fact and you're entitled to judgment as a matter of law. How have you done that with regard to the Solitex matter, which is your burden in this case, as Justice Cook explained, to demonstrate that it's not just that Ms. Gutschall, the plaintiff, doesn't know what happened but that the plaintiff through counsel is never going to be able to present witnesses who would be able to support the plaintiff's case? I don't know that we need to go to the extent because there is the requirement of a response, but what we point out is that she has no knowledge. Okay. And we also point out that there are no witnesses to the accident. Well, but that's the question I asked before. You did not in your request to get an admission that there are no witnesses to this accident. All we know is she doesn't know what happened. Well, I guess. Now you're asking us to infer that there are no witnesses because of the response you received in the request to admit, which was not couched specifically to say there were no witnesses to this accident. Yes or no? Well, we also have the absence of any answers to the interrogatories where we ask the specific question. And I think that it's unfair to take us to task for propounding the proper discovery and pointing out, as has been admitted to here and I think was admitted in oral argument, that there aren't any witnesses. What was the discovery where you received the response saying there aren't any witnesses? There was no response. Period. We asked identify any and all witnesses to which we got no response. Well, but as opposed to request to admit, that's not a self-effectuating situation from which the absence of a response means, for instance, a yes. When you don't get a response to discovery, you just don't have a response to discovery. You could ask to enforce it. You could say give me a response. You could ask for sanctions. But the one thing you don't get is to construe a response the way you want it. Isn't that correct? That's true. I guess it may be a naivete on my part, after 45 years of practice, to believe that I am entitled to receive a discovery response when I propound. You're entitled to it? And if you don't get it, you're entitled to go to court and say, Mr. Morrell, give me a response. I also asked the request to admit, and in the response to the request to admit, they said she can't answer it based upon the Dead Man's Act. Now, I guess if we really want to... How do I know, from looking at these documents, that there wasn't the little old lady across the street who happened to be watching this whole thing and at trial is going to come forth and say, yeah, I saw her trip over the pipe? Well, we've had plenty of admissions here today. How do I know that one? How do I know she's not going to appear, that witness, as I just described, from the information I now have in this record? And I guess the end result would be if I'm sitting there trying the case and no witnesses have ever been identified, and all of a sudden, despite my discovery request, they start popping up on the witness stand, I guess I'm going to be taken to task for never having enforced the lack of responses. And I think that that is putting the shoe on the wrong foot. Well, it's a discovery problem, then. It's not an evidence problem, is it? Discovery problem, I didn't get a response. Bar them. I didn't get a response. Order them to come up with it. But short of that, it's not a self-effectuating matter, counsel. Look, I agree with you. But I think that to hear where she cannot describe what caused her to fall, at that point, and I'll go back and let's relive the proposition, if he files nothing in opposition to it, then I think I'm clearly entitled to summary judgment because I have shown that she cannot establish the cause of her fall. And I think that's where we are unless there is a witness out there somewhere that is going to refute that. And I think I have made my prima facie case as far as the motion for summary judgment is concerned by showing that she has no recollection and cannot say what caused her to fall. Is it your argument that the requests to admit are admitted because she did not respond? Yeah. The facts that I seek are admitted by lack of a response. To the request to admit? To the request to admit. So it's not just the interrogatories that you're striking about. It's the request to admit, your request to admit, and the non-responses to those requests to admit. That's right. And also I would point out that I did what I always do, and that is I have interlocking interrogatories and interlocking requests for production of documents saying if you deny the request to admit, then provide us with the facts upon which that denial is based. So we have that discovery in there as well. Just to be clear regarding the request to admit, what was in your request that would eliminate the possibility of some third party having seen the accident? I don't believe that we need to negate a third party having seen the accident if the plaintiff cannot testify. That's the CELATEX requirement, counsel. And it is, and I think that we have met it, by negating that the plaintiff can say what caused her to fall. And I don't believe that they can escape a summary judgment knowing that there are witnesses out there by not coming forth and saying, yes, here are witnesses. I think they have to file a sworn response to that. If she can't testify, this is what caused me to fall, then how is she going to prove her case? To call the lady from across the street. Okay, with the little old lady from across the street, it's incumbent upon them to oppose the motion by saying that somebody else can show how she fell. We've got the little old lady from across the street. Okay, thank you, counsel. Rebuttal, please. All of the argument and all of the written brief go to what she, Ms. Gutshaw, can do or not do. The entire brief, the entire arguments that they have filed is that she, Jenna Gutshaw, can't prove anything because she's close to being non-compensamentous. That's she, an individual. It doesn't say plaintiff. It says she. And all through this, it's Jenna Gutshaw can't. That doesn't encompass all the things that plaintiff can do. Plaintiff may do things with other witnesses, with other pictures, with other things. I'm sorry, you're going to answer. Why are you saying may? You aren't telling me the evidence is there. You're saying you might be able to find it. Well, I'm saying this is the evidence there, which you've all raised the question about verification, I believe is what you're saying. We don't have someone who says, yes, this is what happened, and I swear. Somebody else says the same. But when you take the physical facts of this short period, look at the pictures of what the instructions were in and around it, I understand, not verified. Let's back up and call this bad faith, good faith. I filed something as I did. But turn it around. Opposing counsel filed something as he did. He had no allegation to do this, but he could have come in at that point and said, I'm striking this. Motion to strike. It's not verified. It's not this and not that. The judge says you're right. It's stricken. I'm led, due to my ignorance or otherwise, from roughly six or seven months to believe, due to my overconfidence, that this is going to be heard. I mean, with all your years of experience, Mr. Morrell, you were taken by surprise that the materials you submitted in opposition to motion for summary judgment required an affidavit under Rule 191? Who could have known such a thing? Is that your position to us? No. My position is this. In my haste to file it, I did not do what you people say I should have done. I acknowledge that. What I'm saying is, if I have done that, and I'm not saying counsel had to do what I would have done, I would have come in at that point, soon before I was going to file a motion for summary judgment, and said, these aren't sufficient. I'm going to move to strike this for this reason and this reason and this reason and go home, Morrell. You can't do it. What about Mr. Miller's point on the interrogatories asking, who are your witnesses in your failure to respond? Well, my client could not respond. And although there is a... The client is supposed to respond to the request to admit. Interrogatories respond by lawyers, aren't they? Information that goes in is from the client. Did you respond saying, I don't know? I'm unable to provide it. Is that what your response said? You failed to respond at all. First of all, but for that horrible case, I think it's Brandon versus DeBusk. I don't think the three of you want to leave this building, accepting that as a good case that fits right into here. What case? The case which counsel has cited, Brandon versus DeBusk. It's a 1980 case, and thank God there's only been one case since then in the X years that has referred to it in an ancillary way. If I were a judge on Brandon versus DeBusk, I probably would have retired and gone someplace to go fishing. What about my question on interrogatories and your failure to respond? Is that true that you said nothing in response to the question of who are your witnesses? Well, and that comes back to Brandon. I can't do it. I can't myself do it. I can't say on the basis of my knowledge and hers, which is zero, give you those answers to the interrogatories. So I'm the trial court. Why should I think this case should advance the trial? What's the point of going to trial if you've got no witnesses? Mr. Morello, your client did not answer this because she's not competent to answer. What are you going to provide to me in the way of evidence? Well, I can tell you what I'm going to provide in the way of evidence, but not in these answers to the interrogatories because at some point the judge says, let's see, we're going to call up Mr. Morello. You said this, this, and this. Your Honor, I'm the attorney for this person. I can't be the attorney for this person and the witness about the answers I gave. I get these answers from information my client gives me. So if I'm the trial judge and say, Mr. Morello, I understand your client has this problem. If this case goes to trial, are you going to be able to provide this court or jury with any witnesses who saw this accident? You hit on a point that's so important because so many of these cases that have been poorly decided relate to the fact to can you do this at trial? That isn't the guide. Can you beat a motion for summary judgment? You may not be able to. You maybe go home with your tail between your legs. Everybody in those cases that I read, poorly written, have said trial. Can you do this at trial? Maybe I can't. And can I get over the threshold of the motion for summary judgment? Am I ever going to get an answer to my question? I'm sorry, did I evade it? Yes. Heartfully, though. Well, thank you. The question was, if I'm the trial court, I ask you, Mr. Morrell, if I deny this motion for summary judgment, are you going to be able to provide us at trial with anyone who witnessed this accident? I'm going to be able to provide you, Your Honor, with witnesses and pictures that go up to a certain point. I'm going to be able to give you pictures and the emergency personnel who came there and had the spontaneous utterances about what she was doing and what she tripped on. Now, in the interim, he's going to be arguing, as he would, what caused the fall. Well, ladies and gentlemen of the jury, here we are. This is what we have. Have we sustained our burden? Is there probable cause to believe that this is what happened? That's why I'm arguing in this. Do I get over that threshold? Maybe not. Pardon me, sir. I know Mike Stauffer. Mr. Morrell, Mr. Miller, thank you for your spirited arguments. Thank you. Thank you. The case is submitted.